**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS HOUGHTON, | ) | No. ED CV 12-462-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on April 9, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 23, 2012, and April 25, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 3, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on March 5, 1981. [Administrative Record ("AR") at 47.] He completed two years of college [AR at 122], and has past relevant work experience as a barista. [AR at 119-20.]

Plaintiff filed his application for Disability Insurance Benefits on August 11, 2009, and protectively filed his application for Supplemental Security Income payments on August 31, 2009, alleging that he has been unable to work since October 10, 2008, due to Graves' disease, complications due to a bone marrow transplant, fatigue, insomnia, and problems with his blood and kidneys. [AR at 9, 47-50, 107-12, 117-23, 130-35.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 51-57, 60-64, 69-70.] A hearing was held on April 14, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. A medical expert, a vocational expert, and a third party witness also testified. [AR at 20-40.] On May 23, 2011, the ALJ determined that plaintiff was not disabled. [AR at 9-16.] On February 22, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

1   as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

3   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

4   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                                        IV.

7                                   **THE EVALUATION OF DISABILITY**

8          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

9   to engage in any substantial gainful activity owing to a physical or mental impairment that is

10  expected to result in death or which has lasted or is expected to last for a continuous period of at

11  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

12

13  **A.      THE FIVE-STEP EVALUATION PROCESS**

14         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

15  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

16  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

17  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

18  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

19  substantial gainful activity, the second step requires the Commissioner to determine whether the

20  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

21  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

22  If the claimant has a "severe" impairment or combination of impairments, the third step requires

23  the Commissioner to determine whether the impairment or combination of impairments meets or

24  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

25  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

26  If the claimant's impairment or combination of impairments does not meet or equal an impairment

27  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

28  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, October 10, 2008.  [AR at 11.][1]  At step two, the ALJ concluded that plaintiff has the severe impairments of hypertension, Graves' disease, and aplastic anemia.  [Id.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] except that plaintiff can only: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for approximately 6 hours out of an 8-hour workday; sit for approximately 6 hours out of an 8-hour workday; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  The ALJ also found that plaintiff is precluded from climbing ladders, ropes, and scaffolds, and must avoid concentrated exposure to workplace hazards, including machinery and unprotected heights.  [AR at 12.]  At step four, the ALJ

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013.  [AR at 11.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

concluded that plaintiff is not capable of performing any past relevant work. [AR at 15.]  At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [Id.]  Accordingly, the ALJ determined that plaintiff has not been under a disability from October 10, 2008, to May 23, 2011, the date of the decision. [AR at 16.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) erred by failing to consider the testimony of plaintiff's mother, and (2) failed to properly evaluate plaintiff's credibility. [Joint Stipulation ("JS") at 3.]  As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

1    symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

2    Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's

3    credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532

4    (9th Cir. 1986).

5           At the administrative hearing, plaintiff testified that he cannot work primarily due to his

6    fatigue.  [AR at 29.]  Plaintiff testified that on average, he is awake for about 30 hours before he

7    sleeps for an average of 12 hours.  [AR at 27.]  He further testified that his fatigue causes him to

8    lie down for 6 to 8 hours a day, "depend[ing] on ... what part of the sleep cycle [he is] in."  Plaintiff

9    stated that the main thing that prevents him from sleeping well is his heart rate, which sometimes

10   becomes so rapid that "it shakes [his] body."  He also stated that anxiety and stress exacerbate

11   his heart rate.  [AR at 30.]  Plaintiff testified that in addition to his fatigue, he "[does not] heal very

12   well," such that "[i]t could take up to a month for a simple cold to go away, even with antibiotics."

13   [AR at 29, 37.]  Plaintiff also testified that due to his symptoms, he "would not be able to be reliable

14   enough" to work.  Plaintiff stated that he "ha[s] to take regular breaks if [he does] anything physical

15   out of ... [the] ordinary."  [AR at 29.]  Further, plaintiff reported that his condition has worsened

16   since he stopped working in October 2008 [see AR at 27] because he has not been able to see

17   specific doctors for his different impairments -- an oncologist for his aplastic anemia, an

18   endocrinologist for his thyroid problems, and a family practitioner who is familiar with all three.  He

19   testified that since October 2008, he is "[t]ired a lot more," his "[s]leep is ... much worse," and his

20   "healing factor is much less."  [AR at 31.]  He also testified that he "bleed[s] a lot for reasons that

21   [he] shouldn't, usually ... from [his] throat or mouth," and that when that happens, he "ha[s] to hold

22   [him]self down and wait ... for [his blood] to clot[] before [he] can put a Band-Aid on; or else, it will

23   continue bleeding."  [AR at 31-32.]

24          At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically

25   determinable impairments could reasonably be expected to cause some of the alleged symptoms."

26   [AR at 13.]  The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity,

27   persistence and limiting effects of these symptoms are not credible to the extent they are

28

1    inconsistent with the [ALJ's RFC findings for plaintiff]."[4]   [Id.]  Thus, at step two, as the record

2    contains no evidence of malingering by plaintiff,[5] the ALJ was required to offer "specific, clear and

3    convincing reasons" for rejecting his subjective symptom testimony.  See Lingenfelter, 504 F.3d

4    at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

5    credible and what evidence undermines the claimant's complaints."  Reddick v. Chater, 157 F.3d

6    715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

7          The ALJ rejected plaintiff's credibility because he: (1) found a lack of objective medical

8    evidence supporting plaintiff's statements, and (2) determined that plaintiff's treatment was

9    "routine" and "conservative," and that his condition was "effectively managed" by his medications.

10   [See AR at 13-14.]

11          As an initial matter, the Court notes that once a claimant has produced objective medical

12   evidence of an impairment or impairments, he "need not produce objective medical evidence of

13   the pain or fatigue itself, or the severity thereof."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.

14   1996); see Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("once an impairment is

15   medically established, the ALJ cannot require medical support to prove the severity of the pain").

16   The Commissioner considers both pain and fatigue to be subjective symptoms, and analyzes

17

---

18   [4]   Perhaps inconsistently, the ALJ also stated in his decision that "[e]ven were [plaintiff's]

19   allegations concerning his fatigue and insomnia and resulting limitations generally credible, in
     order to find the existence of a disabling impairment, there must first be objective medical

20   evidence confirming the existence of a disabling impairment," and that there was "scant ...
     objective medical evidence" to support plaintiff's subjective symptom testimony. [AR at 13.] While

21   the ALJ's step one conclusion is thus not clear, remand is still warranted.  On the one hand, if the
     ALJ rejected plaintiff's credibility because he found no objective medical evidence in the record

22   of any underlying impairment that could reasonably be expected to produce the fatigue and other
     symptoms plaintiff alleged, the ALJ failed to explain how such a conclusion is consistent with his

23   earlier determination that plaintiff has the severe impairments of hypertension, Graves' disease,

24   and aplastic anemia.  [See AR at 11-14.]  On the other hand, if the ALJ rejected plaintiff's
     credibility at step two of the credibility analysis (i.e., after finding that plaintiff does have one or

25   more underlying impairments which could reasonably be expected to produce his alleged
     symptoms), the ALJ's reasons for discounting plaintiff's credibility are not supported by substantial

26   evidence, as discussed infra.

27

28   [5]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
     plaintiff was doing so.

testimony concerning them using the same two-step analysis.  <u>See</u> 20 C.F.R. §§ 404.1529(b); 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); <u>see</u> <u>also</u> <u>Blakeman v. Astrue</u>, 509 F.3d 878, 879 (8th Cir. 2007) ("Fatigue is one of the subjective symptoms that must be considered when ... it is cited by a claimant as a cause of his disability and a medically determinable impairment 'could reasonably be expected to produce' that symptom." (quoting 20 C.F.R. §§ 404.1529(b); 416.929(b))).  The case law holding that "[a] claimant need not produce objective medical evidence of the pain or fatigue itself, ... the severity thereof," or a causal relationship between the impairment and the symptom(s), reflects the rationale that "pain testimony may establish greater limitations than can medical evidence alone."  <u>Smolen</u>, 80 F.3d at 1282 (internal citations omitted); <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005) (citing Social Security Ruling[6] 96-7p).  The Ninth Circuit has noted that "the nature of pain and other such symptoms" is "highly subjective and idiosyncratic" such that "[t]he amount of pain [or fatigue] caused by a given physical impairment can vary greatly from individual to individual."  <u>Smolen</u>, 80 F.3d at 1282 (internal citations omitted).  While an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony."  <u>Burch</u>, 400 F.3d at 681.  Thus, even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if his other reason for discounting plaintiff's credibility is proper.  Here, it is not.

The ALJ rejected plaintiff's subjective symptom testimony because he found that plaintiff's treatment was "routine" and "conservative," and that his symptoms were "effectively managed" by that treatment.  [<u>See</u> AR at 13-14.]  First, the ALJ noted that City of Hope treatment notes dated December 7, 2010, and January 4, 2011, state, respectively, that plaintiff's "last clinic visit with

---

[6]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

endocrinology was in May 2008" and that plaintiff "was lost to followup for a few years." [AR at 13, 189-90, 194-96.]  The ALJ then stated: "The sporadic nature of [plaintiff's] medical care and failure to seek regular professional medical management of his symptoms suggest [plaintiff's] symptoms are not as limiting as alleged." [AR at 13.]  In thus concluding, however, the ALJ ignored evidence in the record demonstrating that plaintiff did not seek medical care for some time after he stopped working in October 2008 [AR at 27] because he did not have health insurance after that time.  For example, the December 7, 2010, treatment note states that plaintiff "lost his job and insurance"; that he "was lost to follow up due to some insurance issues"; that he "actually [visited City of Hope that day] as a self pay to get into the medical system"; and that the doctor planned to see him "a month or so" after that date, "by which time [the doctor] hope[d] that the insurance coverage issues [would have been] addressed." [AR at 194-95.]  In addition, the January 4, 2011, treatment note reflected that between the December visit and that date, plaintiff had been "in communication with [City of Hope's] social worker in order to obtain insurance." [AR at 189.]  Finally, plaintiff testified at the hearing that he has not been able to see the types of doctors that have "the experience to be able to correctly treat" his alleged impairments, including an oncologist for his aplastic anemia, an endocrinologist for his thyroid problems, and a family practitioner who is familiar with all three.  [See AR at 31-33.]  The ALJ failed to consider plaintiff's lack of health insurance in evaluating the relationship between the amount of care plaintiff received and his credibility.  This was error.  See Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1296-97 (9th Cir. 1999) (ALJ cannot reject symptom testimony for not seeking treatment where claimant cannot afford medical treatment or medications); see also Riley v. Astrue, 2010 WL 1443858, at *3 (C.D. Cal. Apr. 9, 2010) (citing SSR 96-7p) (failure to seek medical treatment is acceptable reason to discount pain testimony only if it is unexplained or inadequately explained).  Moreover, the ALJ does not identify how the January 4, 2011, treatment note's indication that the doctor planned to see plaintiff again "in a month or two" supports the ALJ's characterization of plaintiff's treatment as "conservative" and "routine."  [See AR at 13, 189.]  Nor does the ALJ specifically indicate how that treatment note's reflection that plaintiff does not have "active graft-versus-host disease" is, by itself, a clear and convincing reason to reject plaintiff's testimony that

1   he is unable to work due to his fatigue and other symptoms.  [See AR at 13, 189.]  Indeed, plaintiff

2   did not testify that his symptoms were solely or primarily caused by his alleged graft-versus-host

3   disease.  [See AR at 26-37.]

4       In addition, the ALJ discussed plaintiff's hypertension, stating that "the medical evidence

5   of record indicates that this impairment was effectively managed by [plaintiff's] prior medication

6   regimen, when he was compliant."  [AR at 14.]  In making that finding, the ALJ cited a May 16,

7   2008, City of Hope clinic note which states that plaintiff was then "on Tenormin with a controlled

8   blood pressure."  [AR at 151.]  However, the ALJ cites no evidence, and the Court is not aware

9   of any evidence, that plaintiff was later prescribed with Tenormin or any other medications for his

10  hypertension, but was not compliant with them.  [See AR at 14.]  In addition, as discussed supra,

11  the evidence indicates that plaintiff lost his health insurance when he stopped working in October

12  2008.  Thus, insofar as the ALJ assumed that plaintiff was not compliant with his hypertension

13  medication after May 2008 because the ALJ found no records showing that plaintiff was taking

14  Tenormin after that time, such an assumption is unsupported by any evidence.  The ALJ also

15  stated that plaintiff "[r]ecently ... obtained a 'one-time' comprehensive blood panel which revealed

16  virtually normal results," citing a March 3, 2010, lab report and a May 18, 2010, Case Analysis.

17  [AR at 14, 174-76, 180-81.]  In characterizing the results of plaintiff's comprehensive blood panel

18  as "virtually normal," however, it appears the ALJ was relying on the nonexamining physician's

19  May 18, 2010, summary of a different lab report -- dated December 19, 2009.  That summary

20  stated: "RBC decreased at 4.08, MCI4 elevated at 34.1, otherwise within normal limits."  [See AR

21  at 14, 163, 181.]  The ALJ's description of the lab report results as "virtually normal" was a

22  mischaracterization, however -- the nonexamining physician found that the results were within

23  normal limits with the exception of plaintiff's red blood cell count and MCI4 count.  Moreover, the

24  March 3, 2010, lab report, which was the lab report the ALJ actually cited (but did not discuss),

25  indicated a higher number of abnormal results than that of the December 19, 2009, report; the

26  March 3, 2010, report displayed abnormal levels for nine different test categories, including

27  plaintiff's red blood cell count, hemoglobin count, hematocrit, and platelet count.  [See AR at 175-

28  76.]  Lastly, the ALJ stated that the January 4, 2011, City of Hope treatment note "simply

'continue[d]' [plaintiff] on his 'current antihypertensive medications,'" appearing to imply that plaintiff therefore received merely conservative treatment for his hypertension.  [AR at 14, 189.] However, the treating physician also stated in the same paragraph of that note that plaintiff "will require comprehensive medical checkup for which we are considering our ... Long Term Survivors Clinic which can provide some clinical examinations and assessment," but further stated that because "therapeutic intervention cannot be covered from the research program[,] ... it is important that [plaintiff] continues an effort to obtain his insurance support." [AR at 189.]  As such, the fact that plaintiff was merely instructed, on that visit, to continue taking his then-current antihypertensive medications, is not a clear and convincing reason to find that plaintiff's treatment for his hypertension was so conservative as to undermine his statements concerning the severity of his symptoms therefrom.[7]

The ALJ failed to give any clear and convincing reasons supported by substantial evidence to discount plaintiff's credibility.  Remand is warranted on this issue.

## B.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by failing to discuss plaintiff's mother's testimony and assign any weight to her opinion. [JS at 3-6.] Defendant contends that any such error by the ALJ was harmless because the failure to address plaintiff's mother's testimony "was not fatal to the ALJ's over-all determination." [JS at 6-9.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§

---

[7]    Finally, in addressing plaintiff's hypothyroidism, the ALJ pointed out that the May 16, 2008, City of Hope clinic note states that despite plaintiff's complaint of lack of sleep, "there [were] no other symptom[s] of hypothyroidism" on that date. [AR at 13, 151.] The ALJ did not find at step two of the five-step process that plaintiff has the impairment of hypothyroidism. [See AR at 11.] To the extent the ALJ therefore concluded that plaintiff's alleged symptoms were not caused by hypothyroidism, such a conclusion -- even if supported by substantial evidence -- would not constitute a clear and convincing reason to reject plaintiff's statements about the severity of his symptoms from other impairments.

1  404.1513(d)(4), (e), 416.913(d)(4), (e).  Lay witnesses include spouses, parents and other care

2  givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4),

3  416.913(d)(4).  Lay witness testimony by friends and family members who have the opportunity

4  to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.

5  See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987).  Such testimony "is of particular

6  value" because those who see a claimant every day can often tell whether he is suffering or

7  merely malingering.  See Smolen, 80 F.3d at 1289 (citing Dodrill, 12 F.3d at 919).  While an ALJ

8  is not required "to discuss every witness's testimony on an individualized, witness-by-witness

9  basis" (Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)), he may discount the testimony of

10 lay witnesses only for "reasons that are germane to each witness."  Dodrill, 12 F.3d at 919;

11 Regennitter, 166 F.3d at 1298.

12        At the hearing before the ALJ, plaintiff's mother testified that she lives with plaintiff and that

13 his sleep patterns are irregular.  [AR at 33-34.]  She testified that he is usually awake late at night,

14 and that when he does sleep, he sometimes sleeps for 10 hours.  [AR at 34.]  She stated that she

15 has also seen "[it] happen quite a bit" where, at the time she gets up in the morning, plaintiff has

16 "been awake all night, ... and he doesn't go to sleep until maybe midmorning or ... even early

17 afternoon."  [AR at 34-35.]  She also stated that even after he sleeps, he is usually nevertheless

18 very tired, and that he only "once in a great while" reports that he slept well the night before.  [AR

19 at 35.]  With regard to plaintiff's weekly schedule, plaintiff's mother testified that: "He sleeps, rests,

20 and has a few things that he does during the week.  But not much else."  [AR at 34.]  She also

21 testified that on one occasion, when she approached plaintiff to ask him something, he took her

22 hand and placed it over his heart so that she could feel it racing.  When she asked plaintiff what

23 he had been doing, he said, "I'm just lying here."  She stated that his body sometimes shakes and

24 that she has "seen him so addled, because he's just so exhausted[,] that he can't [sic] hardly put

25 sentences together."  [AR at 35.]

26        Here, the ALJ failed to consider the lay witness testimony of plaintiff's mother.  In the

27 decision, the ALJ did not even mention her testimony, and thus did not provide germane reasons

28 for rejecting her statements.  [See AR at 12-14.]  The ALJ's failure to consider the statements of

plaintiff's mother -- who sees plaintiff on a daily basis and has known him for his entire life -- was error.  See Dodrill, 12 F.3d at 919 (citing Sprague, 812 F.2d at 1232) ("Disregard of [lay witness statements] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work.   20 C.F.R. § 404.1513(e)(2).").

Furthermore, the ALJ's failure in this instance does not constitute harmless error because the testimony of plaintiff's mother corroborates plaintiff's testimony, which the ALJ rejected without providing legitimate reasons (see supra).  See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case").  Indeed, her testimony lends some support to plaintiff's testimony regarding his inability to work.  Thus, the Court cannot confidently conclude that no reasonable ALJ, if crediting plaintiff's mother's lay witness testimony, would have reached a different disability determination.  See Ellison v. Astrue, 2008 WL 4425764, at *5 (C.D. Cal. Sept. 29, 2008) ("'[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (citing Stout, 454 F.3d at 1056).  Accordingly, remand is warranted on this issue.

/

/

/

/

/

/

/

/

/

## VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's credibility and properly consider plaintiff's mother's testimony.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 8, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE